"Justice does not lie between a Scylla and Charybdis of technicalities, to be reached only by the most skillful navigators, and to permit any mistake or omission, not affecting the substantial rights of the judgment debtor, to destroy this judgment, would be in utter disregard of the beneficial purpose of the above-quoted provisions of the Code and against the modern conception of court procedure."

The only issue submitted having been determined in favor of petitioning creditors, an adjudication must follow.

In re CABOT.

(District Court, S. D. Ohio, W. D. January, 1921.)

1. Bankrupty ⟨⇒⟩396(1)—Courts ⟨⇒⟩366(19)—Ohio exemption statute applies as interpreted by courts of that state.

Gen. Code Ohio, § 11738, providing for exemptions, applies to a bankruptcy proceeding (Bankruptcy Act, § 6 [Comp. St. § 9590]), and is to be given the meaning fixed by the interpretation of the highest courts of that state.

2. Bankrupty ⟨⇒⟩399(3)—Effect of fraudulent concealment of assets depends on statute and policy of state.

The effect of fraudulent concealment of assets by a bankrupt on his right to exemptions depends on the statutes and policy of the state.

3. Bankrupty ⟨⇒⟩399(3)—Exemption not withheld because of fraud before bankruptcy.

Gen. Code Ohio, §§ 11729, 11738, do not warrant the withholding of exemption of $500 to a husband and wife on the ground that there was fraud in the origin of the debt or in the disposition of the property prior to bankruptcy, because the exemption is not a privilege personal to the debtor, but is for the benefit of his family and the public.

In Bankruptcy. In the matter of the estate of James Fred Cabot, bankrupt. On petition to review finding of referee allowing bankrupt exemption as a married man. Exceptions overruled, and order affirmed.

M. C. Lykins, of Cincinnati, Ohio, for bankrupt.
W. A. Rinckhoff, of Cincinnati, Ohio, pro se.
Charles E. Dornette, of Cincinnati, Ohio, for trustee.

PECK, District Judge. The case is here upon petition to review a finding of the referee allowing the bankrupt his exemption as a married man, under the statute of Ohio, without deducting the value of a certain diamond ring alleged to be fraudulently concealed. We accept the referee's conclusion of fact, as he heard the witnesses.

It appears that the bankrupt, within a few months prior to the filing of his petition, bought upon credit, and without payment of any part of the purchase price, a diamond ring of the value of $300. It is not listed or accounted for among his assets. His attempted explanation, that he, being then employed at a salary of $20 a week, bought it as a present for a niece whom he had not seen for 10 years, and to whom he mailed it, without registration, and who failed to

receive it, is not accepted by the referee as true, nor is it so accepted by this court. The referee found, nevertheless, that the bankrupt had not had possession of, nor power to produce, the ring at any time since the institution of bankruptcy proceedings. Petitioner claimed that its value should be set off against the bankrupt's statutory exemption. This contention the referee denied, and so the case is here.

[1] The Ohio statute applies (Bankruptcy Act, § 6 [Comp. St. § 9590]), and is to be given the meaning fixed by the interpretation of the highest courts of the state. Collier on Bankruptcy (11th Ed.) p. 203. General Code of Ohio, § 11738, allows husband and wife living together, not the owner of a homestead, to hold exempt real or personal property selected by them not exceeding $500 in value, in addition to the amount of other chattel property exempt by law. The exceptions to this exemption are specifically set forth in the statute itself, and in section 11729 and elsewhere. They include claims for the price paid for personal property sought to be held exempt, claims on mortgages, claims for work and labor, vendors' and mechanics' liens, claims for money lost by gambling, and taxes for the sale of intoxicating liquors. There appears to be no statute denying the exemption as against claims incurred by the fraud of the claimant.

[2] The effect of fraudulent concealment of assets by a bankrupt on his right to exemptions also depends upon the statutes and policy of the state. Collier on Bankruptcy (11th Ed.) p. 223. The question is thus put by Judge Dickinson in Re Liby (D. C. Pa.) 218 Fed. 90, 33 Am. Bankr. Rep. 312:

"Is the exemption allowed for the benefit of the bankrupt, or is the exemption law in the nature of a police regulation, and primarily for the benefit of the community, to prevent insolvents from becoming public charges?"

In Ohio the policy was thus declared by Judge Scott in Sears v. Hanks, 14 Ohio St. 298, 84 Am. Dec. 378:

"The humane policy of the Homestead Act * * * seeks not the protection of the debtor, but its object is to protect his family from the inhumanity which would deprive its dependent members of a home. Its benefits can only be claimed by heads of families, married persons living together as husband and wife, and widowers or widows having an unmarried minor child or children residing with them as part of their family."

The policy so declared has been consistently adhered to. Wildermuth v. Koenig, 41 Ohio St. 180; Roig v. Schults, 42 Ohio St. 165, 168. Judge Westenhaver, in Re Hewit (D. C. Ohio) 244 Fed. 245, 247, 40 Am. Bankr. Rep. 6, said of the law of Ohio:

"The homestead exemption, it is said, is not given for the benefit of the debtor, but for the protection of his family, and in part for the protection of the public who might otherwise be burdened with the partial support of an insolvent debtor's family."

See, also, In re Schafer (D. C. Pa.) 151 Fed. 505, 18 Am. Bankr. Rep. 361.

[3] It is concluded that the law of Ohio does not warrant the withholding of the exemption on the ground that there was fraud in the origin of the debt or in the disposition of property prior to bankruptcy, because the exemption is not a privilege personal to the debtor,

but is for the benefit of his family and the public. Therefore the referee, having found that the bankrupt did not have, and could not produce, the ring at or after the filing of the petition, did not err in allowing the exemption provided by the statute. If a fraud was committed, redress must be otherwise sought.

Exceptions overruled. Order affirmed.

---

## EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited, v. ASTORIA MAHOGANY CO., Inc.

(District Court, E. D. New York. December 5, 1923.)

Corporations ⬤➾565(4)—Permission to file claim against corporation's receivers, after time for filing expired and after large sums advanced to receivers, denied.

Where, after the time for filing claims against a corporation in the hands of receivers had expired, several banks advanced large sums of money for its reorganization, the government's application for permission to file a claim for over $500,000 was denied as being inequitable to those who advanced the money in the belief that no such claim existed, regardless of the fact that the government had previously been unable to ascertain the amount due, since it could have served notice that it had a claim.

In Equity. Suit by the Employers' Liability Assurance Corporation, Limited, against the Astoria Mahogany Company, Inc. Application by the United States for permission to file proof of claim. Application denied.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Guy O. Walser, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Shearman & Sterling, of New York City, for receivers.

GARVIN, District Judge. This is an application by the United States of America for permission to file a proof of claim herein against the defendant company, now in the hands of receivers, based upon an alleged right of the United States government to recover damages because of the breach of certain war contracts heretofore made between the government and a company which merged into the defendant during 1919. Receivers were appointed by this court on January 14, 1922. They have since been conducting the business of the defendant company under the direction of the court, and have actively participated in efforts which have been made by various parties interested to reorganize the affairs of the defendant. It has never been claimed that defendant was insolvent, but substantial assistance has been necessary in order to permit the receivers to conduct its business pending the completion of reorganization plans. By order of this court, creditors of the defendant company were required to file their claims within 60 days from March 15, 1922, and notice of such requirement was mailed to all creditors, and was published in the Brooklyn Daily Eagle and Long Island Star, as directed by the court.

The time for filing such claims was extended by order of court to